# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID LAPOSTA and KIMBERLY | ) | |
| LAPOSTA, | ) | |
| | ) | |
| Debtors. | ) | Case No. 08-1966 |
| _____ | ) | |
| | ) | |
| PARKVALE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-32 |
| | ) | |
| DAVID F. LAPOSTA and KIMBERLY A. | ) | |
| LAPOSTA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Parkvale Bank ("Parkvale") claims David and Kimberly LaPosta (the "Debtors") owe it $408,130.26 for collateral sold by LaPosta Automotive, Inc. "out of trust." Parkvale seeks to have this amount excepted from the Debtors' Chapter 11 discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4), and/or (6). The Debtors contend that Parkvale failed to state a claim under §§ 523(a)(4) and/or (6) upon which relief can be granted, and the allegations of fraud and fraudulent conduct under §§ 523(a)(2)(A) and/or (4) have not been pled with particularity as required by Fed. R. Civ. P. 9(b). For the reasons stated herein, the court will grant the Debtors' motion in part, and deny in part.

1

## I. BACKGROUND

David and Kimberly LaPosta ("the Debtors") were the President and Vice President, respectively, of LaPosta Automotive, Inc. ("LaPosta Automotive") and LaPosta Oldsmobile, Inc., which were located in Weirton, West Virginia, and engaged in the sale of automobiles.

Before June 24, 2008, Parkvale extended two lines of credit to LaPosta Automotive and LaPosta Oldsmobile, Inc. The lines of credit were consolidated on June 24, 2008, in favor of LaPosta Automotive, in accordance with a Business Loan Agreement under which Parkvale agreed to continue financing the acquisition/refinancing of new and used vehicles for sale in the ordinary course of LaPosta Automotive's business. The advances made against the line of credit were made at the request of LaPosta Automotive. The Debtors, as the officers of LaPosta Automotive, were the only persons authorized to request such advances. The Business Loan Agreement also required LaPosta Automotive, upon sale of a vehicle, to make a prepayment of the outstanding principal balance of the advance pertaining to the vehicle sold, and required that the proceeds from any disposition of the collateral be held in trust for Parkvale and not commingled with any other funds.

In addition to the Business Loan Agreement, the Debtors and Parkvale executed several other documents securing Parkvale's interest in LaPosta Automotive's inventory, including a Commercial Security Agreement, Promissory Note ("Note"), and a Commercial Guaranty (the "Guaranty"). The Security Agreement secured the $1.2 million extension of credit to LaPosta Automotive, and the Guaranty personally bound the Debtors until discharge of all LaPosta Automotive's obligations under the Note and related documents. The Business Loan Agreement also permitted agents of Parkvale to inspect any and all collateral under the agreement at any reasonable time. On several occasions, Parkvale agents inspected LaPosta Automotive's inventory and discovered that between 17 and 27 vehicles were not on site during such visits.

## II. DISCUSSION

David and Kimberly LaPosta ("the Debtors") contend Parkvale Bank ("Parkvale") failed to state a claim under §§ 523(a)(4) and (6) upon which relief can be granted, and that Parkvale failed to plead allegations of fraud and fraudulent conduct under §§ 523(a)(2)(A) and (4) with particularity.

As the party asserting causes of action arising under § 523(a), Parkvale bears the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279 (1991). When considering the applicability of an exception to discharge under § 523(a), the court

is to construe the statute narrowly in favor of the debtor to protect the primary purpose of the Bankruptcy Code, which is to provide a debtor with a financial fresh start. *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

**A. Pleading fraud under Rules 7009 and 9(b)**

Parkvale alleges fraudulent conduct on the part of the Debtors as grounds for exception to discharge under 11 U.S.C. §§ 523(a)(2)(A) and (4). Parkvale contends that the Debtors fraudulently obtained money from it by diverting collateral and sale proceeds in violation of the Debtors obligations to Parkvale, and it accuses the Debtors of misleading, misrepresenting, and making false statements to it. As a result, Parkvale contends, it continued to extend credit to LaPosta Automotive. Parkvale further argues that the Debtors committed acts of fraud while acting in a fiduciary capacity by knowingly causing LaPosta Automotive to breach its duty to Parkvale. The Debtors moved to dismiss Parkvale's action under §§ 523(a)(2)(A) and (4) for failure to plead fraud with particularity.

Under Fed. R. Bankr. P. 7009 the pleader must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The detail required by the particularity requirement differs with the facts of each case, but in alleging circumstances constituting fraud, the claimant is usually required to allege: (1) the identity of the person who made the fraudulent statement; (2) the time of the misrepresentation; (3) the place of the misrepresentation; (4) the content of the misrepresentation; (5) the method by which the misrepresentation was communicated; (6) the persons or entities to whom the misrepresentation was communicated; and (7) the injury resulting from reliance on the misrepresentation. 2 *Moore's Federal Practice - Civil* § 9.03[1][b] (2010); *see also, Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

In this case, Parkvale alleges several instances of written misrepresentations made by David LaPosta, acting in his official capacity as President of LaPosta Automotive. For example, Parkvale alleges that during its inspection of its collateral, David LaPosta represented that several cars were unavailable as they were being test driven when, in fact, they had been sold out of trust. Thus, Parkvale's complaint outlines the specific representations made by David LaPosta, the dates of such representations, where the representations were made, and the injury resulting therefrom. Parkvale alleges that but for the representations of David LaPosta, it would not have continued under the Business Loan Agreement and would have exercised its rights upon default. Therefore, Parkvale has pled fraud with sufficient particularity, because it provides the time, place, and contents of each

3

alleged misrepresentation, the maker of the representations, and injury.

Although Parkvale has pled allegations of fraudulent conduct by David LaPosta with sufficient particularity, the allegations against Kimberly LaPosta are lacking. Parkvale asserts that both Debtors made false representations to agents of Parkvale. However, Parkvale pled only those instances of alleged misrepresentations made by David LaPosta. Therefore, Parkvale's allegations under §§ 523(a)(2)(A) and (4) are sufficient against David LaPosta, but fail as against Kimberly LaPosta.

**B. Debtors' motion to dismiss under Rule 7012 and Rule 12(b)(6)**

Parkvale claims that the Debtors committed acts of fraud while acting in a fiduciary capacity by causing LaPosta Automotive to breach its duty to Parkvale. Parkvale further alleges that the Debtors' deliberate concealment of the sale of certain collateral, and the Debtors failing to remit the proceeds thereof to Parkvale under the terms of their Security Agreement, constitute a willful and malicious injury to its property, and as such, the Debtors' out of trust indebtedness is excepted from their anticipated bankruptcy discharge. The Debtors contend that Parkvale has failed to state a claim upon which relief can be granted under §§ 523(a)(4) and (6). Fed. R. Bankr. P. 7012(b)(6).

Review of a motion to dismiss for failure to state a claim upon which relief can be granted, requires consideration of whether the pleader has provided more than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level," and the factual allegations must be enough to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.* Determining whether a complaint is "facially plausible" is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 1950.

**i. Section 523(a)(4): Defalcation, Embezzlement, Larceny**

Section 523(a)(4) excepts debts from discharge that arise out of "fraud or defalcation while acting in a fiduciary capacity" and debts incurred through embezzlement or larceny. 11 U.S.C. § 523(a)(4).

In *Republic of Rwanda* v. *Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), the court

4

defined the tort of defalcation:

> Defalcation is "the failure to meet an obligation" or "a nonfraudulent default." To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of . . . 'embezzlement' or even 'misappropriation.'" Thus, negligence or even an innocent mistake which results in misappropriation or failure to account is sufficient.

*Id.* at 811; *see also Pahlavi* v. *Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997) ("[A] 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'") (citation omitted).

Importantly, by statute, an act of defalcation is only excepted from discharge when the defalcation is committed by a debtor acting in a fiduciary capacity. The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell* v. *Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller* v. *J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Under federal common law, the term "fiduciary" is not limited to instances involving express or technical trusts, but includes "trust-like" obligations owed by directors of an insolvent corporation to corporate creditors. *Centra Bank, Inc. v. Burton (In re Burton)*, 416 B.R. 539, 548 (Bankr. N.D.W.V. 2009) (citing *FDIC v. Sea Pines Co.*, 692 F.2d 973, 976-77 (4th Cir. 1982)). More importantly, the use of the word "trust" is not paramount to finding such an obligation. Language which shows an intention that the debtor take possession of proceeds, segregate them from its own funds, and hold them on behalf of another is sufficient to establish a trust relationship, as differentiated from a standard debtor-creditor relationship. *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 499-500 (4th Cir. 2008).

Here, Parkvale and the Debtors entered into a Commercial Security Agreement to secure Parkvale's extension of credit to LaPosta Automotive. The security agreement provided that all proceeds from disposition of collateral covered by the security agreement were to be held in trust for Parkvale and not commingled with other funds. Despite the Debtors' claim that their relationship with Parkvale was nothing more than a traditional debtor-creditor relationship, the arrangement was sufficient to create a trust agreement under *Kubota*. The relevant portion of the Commercial Security Agreement provides, in part, that "all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with

5

any other funds." (Exhibit B). The Debtors did not have unrestricted use of the assets in question; rather, the Debtors were required to hold such assets for the benefit of the creditor. Furthermore, the Debtors owed a fiduciary duty to Parkvale. Not only did the fiduciary duty arise because of the Debtors' positions as officers of LaPosta Automotive, *In re Burton*, 416 B.R. at 548, but the duty also arose from the Debtors' Guaranty to Parkvale. *In re Strack*, 524 F.3d at 500. By guaranteeing LaPosta Automotive's debt to Parkvale, the Debtors became obligated, as fiduciaries, to ensure LaPosta Automotive fulfilled its obligations to Parkvale, including holding sale proceeds in trust for Parkvale.

### ii. Section 523(a)(6) Willful and Malicious Injury

Parkvale alleges that the deliberate concealment of the sale of certain collateral by the Debtors, and their failure to remit the proceeds thereof to Parkvale under the terms of their Security Agreement, constitute willful and malicious injury to its property, and as such, the Debtors' out of trust indebtedness is excepted from their anticipated bankruptcy discharge. The Debtors contend that Parkvale has failed to state a claim under 11 U.S.C. § 523(a)(6) upon which relief can be granted.

Section 523(a)(6) of the Code provides that a discharge in bankruptcy does not apply to any debts that arise from the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The test is conjunctive; thus, a willful injury by itself is insufficient to support a cause of action unless the act was also done maliciously. *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991). Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau* v. *Geiger*, 523 U.S. 57, 60 (1998). As stated by the Court of Appeals for the Fourth Circuit:

> [Section] 523(a)(6) applies only to "acts done with actual intent to cause injury."
>
> Section 523(a)(6) is not satisfied by negligent, grossly negligent, or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

*Duncan* v. *Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006).

Thus, for an injury to be "willful," the debtor must have intended the consequences of the debtor's act. More specifically, intentional conduct occurs when a debtor knows that the consequences flowing from the complained of acts are certain, or substantially certain, to occur. *Barclays American/Business Credit., Inc.* v. *Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (adopting the definition of "intentional" as stated in *Restatement (Second) of Torts* § 8A, comment b (1965)). For an act to be "malicious," the act must be targeted at the plaintiff, at "least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* at 881. A "malicious act" is "[a]n intentional, wrongful act performed against another without legal justification or excuse." *Black's Law Dictionary* 977 (8th ed. 2004). Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, the requirements regarding a malicious act may be inferred from the circumstances surrounding the injury at issue. *St. Paul Fire & Marine Ins. Co.* v. *Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

In sum, for a debt to be excepted from a debtor's discharge pursuant to § 523(a)(6), the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious.

Here, Parkvale has pled facts that raise a right of relief above the speculative level, and provide notice to the Debtors of the charges against them so that they may defend against the complaint. The complaint alleges multiple instances of misrepresentations made by David LaPosta, to agents of Parkvale, in order to maintain the line of credit extended by Parkvale and deprive Parkvale of its rights against the Debtors for default. For example, a large portion of LaPosta Automotive's inventory was absent from each inspection made by Parkvale agents, Parkvale did not receive appropriate remittances, and the funds from sales were not held in trust according to the agreement with Parkvale. David LaPosta represented that the absent inventory was either being test driven, driven by a member of the LaPosta family, or at "Mountaineer Promotion." Parkvale has pled enough facts to state a claim for willful and malicious injury. *See*, *e.g.*, *Central Fidelity Bank v. Gary Higginbotham*, *Virginia First Savings Bank v. Gary Higginbotham (In re Higginbotham)*, 117 B.R. 211, 216 (Bkrtcy. E.D.Va. 1990).

### III. CONCLUSION

For the reasons stated herein, the Debtors' Rule 9(b) motion is granted in regard to

7

allegations of fraud against Kimberly LaPosta, but denied in regard to allegations of fraud against David LaPosta, and Parkvale has fourteen (14) days from the entry of the order accompanying this memorandum opinion to file an amended complaint. The Debtors' motion to dismiss for failure to state a claim under §§ 523(a)(4) and (6) is denied.